IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN JOSEPH DRELLING,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

CIVIL ACTION
NO. 14-2211

## OPINION

**Slomsky, J.**                                                                                                                                                              January 20, 2016

### I.   INTRODUCTION

Before the Court are the Objections of Plaintiff Stephen Joseph Drelling to the Report and Recommendation of Magistrate Judge Thomas J. Rueter. (Doc. No. 22.) Plaintiff filed a Complaint against Defendant Carolyn W. Colvin, Commissioner of Social Security, seeking review of the final decision of Defendant on Plaintiff's claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f (the "Act"). (Doc. No. 3.) The Court referred this matter to United States Magistrate Judge Thomas J. Rueter for a Report and Recommendation. (Doc. No. 16.) On June 10, 2015, Magistrate Judge Rueter filed a Report and Recommendation (the "Report"), recommending that Plaintiff's request for review be denied. (Doc. No. 18.) On July 13, 2015, Plaintiff filed Objections to the Report. (Doc. No. 22.) On July 17, 2015, Defendant filed a Response to Plaintiff's Objections. (Doc. No. 24.)

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the portions of the Report to which objection has been made. After independently reviewing the Administrative Record and for reasons that follow, the Court will grant in part and deny in part Plaintiff's request for review. This matter will be remanded to the Commissioner based upon the

Administrative Law Judge's failure to present the vocational expert with a hypothetical question that adequately presented Plaintiff's limitations.

## II.   BACKGROUND

### A. Factual and Procedural History

Plaintiff Stephen Joseph Drelling applied for Social Security benefits on April 26, 2010, alleging disability due to physical and mental impairments beginning March 3, 2010. (Doc. No. 18 at 1.) Regional Commissioner Laurie Watkins denied his request on December 13, 2010. (Administrative Record ("R.") at 21, 660-65.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Gerald J. Spitz held a hearing on Plaintiff's claim on July 25, 2012. (R. at 1073-1118.) At the hearing, the ALJ heard testimony from Plaintiff and Vocational Expert ("VE") Agnes Gallen. (Id.) He also considered other evidence, including medical reports. On August 15, 2012, the ALJ issued a decision finding that Plaintiff was not disabled and denying his request for benefits. (R. at 21-29.)

At the hearing before the ALJ, Plaintiff presented the following evidence. At the time of the hearing, Plaintiff was forty years old and weighed 201 pounds. (R. at 1080, 1094.) He lived with his parents and daughter. (R. at 1086.) He received food stamps and medical assistance, but no other cash assistance. (R. at 1088.) He separated from the mother of his child in January 2012, and was seeking full custody of his child at the time of the hearing. (R. at 1104-06.)

Plaintiff had been a department manager at Wal-Mart for six to eight months. Plaintiff testified that this position was so stressful that he had to be admitted to a hospital. He returned to the job upon discharge from the hospital, but left a month later because of the stress. (R. at 1081-82, 1087.) Plaintiff had also worked as a cashier, picker/packer, and shelf stocker at retail stores such as Wal-Mart and a dollar store. (R. at 1087.)

Plaintiff's frequent need to use the restroom and trouble breathing impeded his efficiency in these jobs. (R. at 1088.) His breathing difficulties were triggered by extreme heat and exertion. He could walk for five to ten minutes without a problem, and lift twenty to thirty pounds before he had trouble breathing. His breathing was not affected by standing. He smoked one pack of cigarettes per day at the time of the hearing, about half as much as he had previously smoked. He noted that his breathing improved slightly after decreasing the amount of his smoking. (R. at 1088-89.)

According to Plaintiff, he used the restroom anywhere from one to ten times a day depending on the severity of his gastrointestinal issues. (R. 1093-94.) He visited a gastroenterologist biannually, and was prescribed medication for his condition. (R. at 1093-97.)

In addition, Plaintiff suffered from back and neck pain, precipitated by lifting and walking uphill. (R. at 1096-98.) He treated this pain with over-the-counter medication. (R. at 1096-98.) Plaintiff also experienced decreased motivation, energy, and appetite due to depression. (R. at 1098-99.) He testified that he experienced difficulty concentrating. (R. at 1102.) He was prescribed medication to treat his depression. (R. at 1099-1100.) Plaintiff also experienced chest pain, which he associated with anxiety. (R. at 1109.)

On a typical day, Plaintiff would play with his five-year-old daughter and drive her to school. He received help from his parents in caring for her. (R. at 1101.) He testified that he had no friends or social life, and had ended his relationship with the mother of his daughter in 2012. (R. at 1104-1106.)

Next, the VE testified as to Plaintiff's ability to work. She characterized Plaintiff's prior jobs of picker/packer and laborer as unskilled and light, and his prior job of manager as skilled. However, she opined that Plaintiff did not perform the manager job long enough to develop

3

skills. (R. at 1113.) When asked whether there were jobs that could be performed by someone who required frequent bathroom breaks, the VE responded that such a person would be able to perform the shelf-stocking job Plaintiff had at the dollar store because the job could be performed in the evening when customers were not there. (R. at 1113.) However, if bathroom breaks were so frequent as to prevent Plaintiff from shelving items timely, that job would not be appropriate. (Id.)

Plaintiff's counsel questioned the VE regarding the medical opinion of Plaintiff's treating psychiatrist, Dr. Mittleman. (R. at 1115.) The VE responded that, based solely on Dr. Mittleman's findings—including that Plaintiff was unable to maintain attention for two-hour segments and to attend work regularly—Plaintiff would be precluded from working. (R. at 1116.)

In addition to testimony by Plaintiff and by the VE, the ALJ considered medical opinions of Randi Mittleman, M.D., Plaintiff's treating psychiatrist, and state agency psychologist Mark Hite, D.Ed. (Doctor of Education), as well as various other medical records and evaluations. Based on the evidence before him, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since April 26, 2010, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: asthma, irritable bowel syndrome (IBS), obesity, and mood disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b), with the limitations that the work: be simple and routine (i.e., unskilled); avoid exposure to dust, fumes, odors, gases, chemicals and poor ventilation; and, allow for frequent bathroom breaks to the extent that he would still be able to complete his work by the end of a shift.

5. The claimant is capable of performing past relevant work as a store laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since April 26, 2010, the date the application was filed (20 CFR 416.920(f)).

(R. at 23-29.) Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

On February 11, 2014, the Social Security Administration Appeals Council denied Plaintiff's request for review. (R. at 10-13.) On April 16, 2014, Plaintiff filed the Complaint in this Court, seeking judicial review of the adverse decision of the ALJ. (Doc. No. 3.) As noted above, the Court referred the matter to Magistrate Judge Rueter for a Report and Recommendation. (Doc. No. 16.) Magistrate Judge Rueter performed a thorough analysis of the record, ultimately determining that substantial evidence in the record supported the ALJ's conclusion that Plaintiff is not disabled. On June 10, 2015, Magistrate Judge Rueter recommended that Plaintiff's request for review be denied. (Doc. No. 18.) On July 13, 2015, Plaintiff filed Objections to Magistrate Judge Rueter's Report (Doc. No. 22), which are now ripe for review and a decision.

### B. Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979.) If he does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work

5

experience, he is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) (citing Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)); Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). The Court must

also determine whether the ALJ applied the proper legal standards in evaluating a claim of disability.  McHerrin v. Astrue, No. CIV. A. 09-2035, 2010 WL 3516433, at *2 (E.D. Pa. Aug. 31, 2010) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984)).

## III. DISCUSSION

Plaintiff has made two Objections to the Report.[1]  (Doc. No. 18).  First, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ's reliance on "other medical evidence in the record to discount the opinion of Dr. Mittleman" was supported by the Administrative Record. (Doc. No. 22 at 1.)  Plaintiff claims that the Magistrate Judge, like the ALJ, ignored other evidence supportive of Dr. Mittleman's findings.  (Doc. No. 22 at 2.)  Second, Plaintiff objects to the Magistrate Judge's rejection of Plaintiff's argument that the ALJ relied upon an incomplete hypothetical question.  (Doc. No. 22 at 3.)  The Court will discuss each Objection seriatim.[2]

### A. The Magistrate Judge Properly Concluded that the ALJ Did Not Err by Giving Dr. Mittleman's Opinion Little Weight

Plaintiff first argues that the Magistrate Judge's conclusion that the ALJ properly relied on "other medical evidence in the record to discount the opinion of Dr. Mittleman" is not supported by the Administrative Record.  (Doc. No. 22 at 1.)  Plaintiff objects to the ALJ's rejection of the limitations assessed by Dr. Mittleman, arguing that the ALJ should have given them greater weight in his analysis.  Plaintiff also avers that the Magistrate Judge, like the ALJ,

---

[1] Plaintiff's arguments are not presented as distinct Objections, but the Court will treat them as such.

[2] In her Response to Plaintiff's Objections, Defendant "notes that Plaintiff's objections are essentially a re-argument of the issues raised by Plaintiff in his Brief," and accordingly Defendant "relies upon the reasoning set forth in Magistrate Judge Rueter's R&R, as well as the arguments set forth in the Commissioner's brief."  (Doc. No. 24 at 1.)

disregarded a "plethora of objective findings supportive of Dr. Mittleman's assessed limitations."[3] (Id. at 2.)

As Magistrate Judge Rueter correctly noted in the Report, a treating source's opinion on the nature and severity of a claimant's impairment will be given controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 427. Moreover, the Third Circuit has recently held that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown, 649 F.3d at 197 n.2.

When there is a conflict in the evidence, the ALJ is entitled to decide which evidence to credit, so long as the evidence is not rejected for "no reason or the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). Moreover, an ALJ is not required to accept every medical limitation assessed by a medical professional, but rather only those he finds are credibly established by the record. Salles v. Comm'r Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007). Finally, upon review, "the question is not whether we would have arrived at the same decision; it

---

[3] Plaintiff directs the Court to a portion of his brief before the Magistrate Judge in which he lists fifty-two examples of clinical findings between 2010 and 2012 in the Administrative Record that he claims support Dr. Mittleman's findings. Specifically, Plaintiff cites to four treatment plans from Family Services between October 2011 and June 2012. These treatment notes indicate that Plaintiff made minimal overall improvement with respect to his symptomatology, despite regular therapy and pharmacological intervention. (Doc. No. 22 at 2-3 (citing R. at 955, 959, 963, 967).)

is whether there is substantial evidence supporting the Commissioner's decision." Donatelli v. Barnhart, 127 F. App'x 626, 630 (3d Cir. 2005).

Magistrate Judge Rueter reviewed the ALJ's considerations and findings as to the evidence in the record. The Magistrate Judge found that there is substantial evidence in the record to support the ALJ's findings and reasons for crediting and discrediting medical evidence and opinions as he did.

The ALJ found that, although Dr. Mittleman was Plaintiff's treating psychiatrist, her opinion was not entitled to great weight. According to the ALJ, Dr. Mittleman's opinion was not well supported by clinical and diagnostic evidence and was inconsistent with other evidence in the record.[4] Moreover, Dr. Mittleman did not offer specific reasons for her conclusions, so the ALJ could not determine how the documentary medical evidence led to Dr. Mittleman's findings. The ALJ further noted that Dr. Mittleman's assessment was inconsistent with Global Assessment Functioning ("GAF") scores ranging from 55-60 that had been assigned to Plaintiff.[5] Though the

---

[4] Magistrate Judge Rueter recounted information from the Mental Impairment Questionnaire completed by Dr. Mittleman indicating that Plaintiff had poor ability to function in such areas as maintaining attention for two-hour segments and punctuality in attendance. Dr. Mittleman found that Plaintiff had fair ability to function in such areas as the ability to carry out simple instructions and maintain socially appropriate behavior. Additionally, she opined that Plaintiff would miss work more than three times per month. (Doc. No. 18 at 10 (citing R. at 851-52).)

[5] GAF scores assess an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000). "The GAF scale . . . ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." West v. Astrue, No. CIV. A. 09-2650, 2010 WL 1659712, at *4 (E.D. Pa. Apr. 26, 2010)). Though a GAF score alone does not necessarily indicate an impairment, it constitutes "relevant medical evidence that 'must be addressed by an ALJ in making a determination regarding a claimant's disability.'" Packard v. Astrue, No. CIV. A. 11-7323, 2012 WL 4717890, at *2 (E.D. Pa. Oct. 4, 2012) (quoting Colon v. Barnhart, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006)). GAF scores of 55 to 60 indicate "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends,

treatment notes of Dr. Mittleman contain references to Plaintiff's depression and anxiety, "the record contains ample evidence to discredit Dr. Mittleman's opinion that [P]laintiff's limitations were of disabling severity."[6] (Doc. No. 18 at 15.)

In contrast to Dr. Mittleman's findings, state agency psychologist Mark Hite concluded that Plaintiff was able to "meet the basic mental demands of competitive work on a sustained basis" despite his limitations. (R. at 826.) Though Dr. Hite noted that Plaintiff's concentration was "somewhat impaired," he found that Plaintiff was able to work within a set work schedule at a consistent pace. (Id.) He also concluded that Plaintiff was capable of making decisions, carrying out instructions, and maintaining concentration and attention for extended periods of time. (Id.)

In addition to the opinion of Dr. Hite, the ALJ considered psychiatric evaluations by the Family Service Association, as well as records of Plaintiff's mental health treatment and individual therapy at Penndel Mental Health Center and Family Service Association of Bucks County. These records indicated that, although Plaintiff was diagnosed with bipolar disorder, he was given a GAF score of 55-60 on multiple occasions. (Doc. No. 18 at 11.) In justifying his decision to afford "little weight" to the opinion of Dr. Mittleman in light of other evidence in the record, the ALJ explained:

---

conflicts with peers or co-workers.)" Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

[6] The Magistrate Judge noted that Dr. Mittleman's assessments were at times contradictory. At one visit, Dr. Mittleman assigned Plaintiff a GAF score of sixty, and she "noted during several visits that [P]laintiff was pleasant, calm, cooperative, and had logical thought process and normal speech." (Doc. No. 18 at 15 (citing R. at 877, 946).) In defense of these contradictions, Plaintiff contends that the GAF of 60 was assigned "in the context of a therapeutic setting, without the stress of working," whereas the record as a whole indicates that Plaintiff's impairments were severe. (Doc. No. 22 at 2-3.) As discussed below, the ALJ provided sufficient reasoning for affording Dr. Mittleman's conclusions little weight.

> [T]he treating provider's opinion is not well supported by detailed, clinical and/or diagnostic evidence, and is inconsistent with other substantial evidence in the case record. Dr. Mittleman offered no specific rationale for [her] assessment so that it was impossible to discern how the documentary medical evidence gave rise to [her] ultimate opinion. [She] failed to cite any specific occasions that established the claimant's inability to perform activities of daily living, any specific instances describing the claimant's inability to interact with other people, or any specific occurrences utilized as an example of the claimant's poor attention or concentration. [Her] assessment is also inconsistent with GAF scores ranging from 55-60, with a score of 60 as recently as May 2012. [Her] assessment is also inconsistent with the claimant's self-reported activities of daily living.

(R. at 28.)

As the Magistrate Judge concluded, in view of the inconsistencies in the record, the ALJ's decision to give Dr. Mittleman's assessment less weight than other evidence in the record was supported by substantial evidence and appropriately explained by the ALJ.

### B. The Magistrate Judge Improperly Concluded that the Hypothetical Question Was Adequate

Plaintiff's second Objection concerns the hypothetical question that the ALJ asked the VE in order to determine Plaintiff's ability to work at Step Five of the disability analysis.[7]

---

[7] The Third Circuit summarized the five-step sequential process to determine whether a claimant is disabled as follows:

> At step one, the SSA will find that a claimant is not disabled unless he demonstrates that he is not working at a "substantial gainful activity." At step two, the SSA will find no disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." If the claimant successfully demonstrates that he has a severe impairment, the SSA determines at step three whether the impairment is on a list of impairments presumed severe enough by the SSA to render one disabled; if so, the claimant qualifies. If, however, the claimant's impairment is not on the list, the inquiry proceeds to step four and the SSA assesses whether the claimant has the "residual functional capacity" to perform his previous work. Unless he shows that he cannot, he is determined not to be disabled. If the claimant survives step four, the fifth step requires the SSA to consider "vocational factors" (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the

According to Plaintiff, the Magistrate Judge should have concluded that the hypothetical question was insufficient because the ALJ did not "adequately convey" the claimant's limitations in the question. (Doc. No. 22 at 4.) The ALJ posed the following question to the VE:

> What about the – a work setting that I mentioned. If, if, if an employee had an irritable bowel problem or the problem required more frequent bathroom breaks than the average employee let's say, what, what would be an appropriate work setting, if there is one, to accommodate that problem?

(R. at 1113.) Plaintiff argues that the hypothetical question was flawed because it failed to address the impact of the moderate limitations which the ALJ had assessed in the area of concentration, persistence, and pace. (Doc. No. 22 at 3.)

In support of his argument, Plaintiff relies on Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004). In Ramirez, the Third Circuit held that where the hypothetical question posed by an ALJ fails to reflect all of a claimant's impairments that are supported by the record, the opinion of the VE cannot be considered substantial evidence. Id. at 555. The hypothetical question in Ramirez lacked reference to the claimant's deficiencies in concentration, persistence, and pace, despite ample evidence of these deficiencies in the record. Id. at 549. The Third Circuit noted that it was "not satisfied that [the hypothetical question took] into account the ALJ's own observation (both in her opinion and in the [Psychiatric Review Technique Form]) that Ramirez *often* suffered from deficiencies in concentration, persistence, or pace."[8] Id. at 554 (emphasis in original). In this case, Plaintiff argues that the ALJ also "did not 'adequately convey' the impact of the assessed moderate limitation in concentration, persistence, or pace in his hypothetical

---

> national economy. Unlike some of the earlier stages in the evaluation process, the burden of proof at step five is on the agency.

Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004) (internal citations omitted).

[8] Psychiatric Review Technique Forms ("PRTFs") are used by state agency doctors and ALJs to assess mental impairments. See Ramirez, 372 F.3d at 549.

question," and, "[i]n fact, . . . no mental limitations whatsoever were presented" in the hypothetical question. (Doc. No. 22 at 5-6 (emphasis in original).)

In order for a VE's testimony to provide an appropriate basis for the ALJ's decision, the ALJ must pose a hypothetical question to the VE that sets forth all credibly established limitations. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). If a VE's testimony in response to a hypothetical question fairly sets forth every credible limitation established by the evidence, the testimony is substantial evidence of non-disability, and satisfies the Commissioner's burden at Step Five. Id. When an ALJ presents a hypothetical question to a vocational expert, he need not explicitly state every medical finding in the record. Casillas v. Astrue, 671 F. Supp. 2d 635, 656 (E.D. Pa. 2009). Rather, as the Third Circuit held in Ramirez, an ALJ need only "adequately convey" those medical limitations. 372 F.3d at 552-55. However, "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (citing Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984)).

Plaintiff specifically objects to Magistrate Judge Rueter's reliance on Williams v. Colvin, No. CIV. A. 13-5566, 2015 WL 221078 (E.D. Pa. Jan. 15, 2015), because its "very line of reasoning was squarely rejected" by the Third Circuit in Ramirez. (Doc. No. 22 at 4.) The Magistrate Judge cited Williams along with four other cases from the Eastern District of Pennsylvania and the Third Circuit as examples of cases that "have found that [a residual functional capacity ("RFC")] that limits a claimant to simple, routine tasks adequately

accommodates moderate limitations in concentration, persistence and pace."[9] (Doc. No. 18 at 20.) Here, while the ALJ incorporated the moderate limitations in concentration, persistence, and pace into Plaintiff's RFC, he did not incorporate them into the hypothetical question.[10]

In light of recent changes in Social Security regulations, courts have held that the terms "often" and "moderate" are equivalent.[11] See, e.g., Colon, 424 F. Supp. 2d at 811 ("A finding of 'often' under the old scale therefore roughly equates to a 'moderate' deficiency."); Dynko v. Barnhart, No. 03-CV-3222, 2004 WL 2612260, at *5 n. 34 (E.D. Pa. Nov. 16, 2004) ("'often' and 'moderate' fall on the same point on a five-point continuum, and therefore can be considered equivalent findings"). The issue in Ramirez was whether the ALJ erred by not including in her hypothetical question observations from the PRTF that the claimant "often" suffered from deficiencies in concentration, persistence, or pace. Here, the issue is whether the ALJ erred by

---

[9] The Magistrate Judge also cited McDonald v. Astrue, 293 F. App'x 941, 946-47 (3d Cir. 2008) (not precedential), Menkes v. Astrue, 262 F. App'x 410, 412-13 (3d Cir. 2008) (not precedential), Gunter v. Colvin, CIV. A. 12-6498, 2014 WL 4186501, at *4 (E.D. Pa. Aug. 25, 2014), and Douglas v. Astrue, 2011 WL 482501, at *4-5 (E.D. Pa. Feb. 4, 2011). The hypothetical questions in those cases—unlike the one in this case—all addressed moderate limitations in concentration persistence, and pace in the hypothetical question by restricting the hypothetical work to "simple routine tasks."

[10] The ALJ's RFC determination was as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b), with the limitations that the work: be simple and routine (i.e., unskilled); avoid exposure to dust, fumes, odors, gases, chemicals and poor ventilation; and, allow for frequent bathroom breaks to the extent that he would still be able to complete his work by the end of a shift.

(R. at 23-29.)

[11] As noted in the Report, since Ramirez, there was a change in Social Security regulations regarding mental impairments and assessment of concentration, persistence, and pace. See 20 C.F.R. § 416.920a(c)(4).

14

not including in his hypothetical question observations from the PRTF that the claimant suffered from "moderate" deficiencies in concentration, persistence, or pace.[12]

A number of district court decisions issued after Ramirez have refused to uphold an ALJ's ruling where a hypothetical question did not reflect a finding that a claimant either "often" had deficiencies or had "moderate" deficiencies in concentration, persistence or pace. See, e.g., Gray v. Colvin, No. 3:13-CV-01944-GBC, 2014 WL 4536552, at *17-18 (M.D. Pa. Sept. 11, 2014) ("In light of Ramirez, which Plaintiff invokes in her brief, we find that the ALJ's hypothetical failed to sufficiently convey Plaintiff's impairments. . . . We are further compelled by the rulings of other district courts within our Circuit, which have similarly refused to uphold an ALJ's decision where the claimant had "moderate" deficiencies in concentration, persistence, or pace (or "often" experienced such deficiencies), and the ALJ limited the claimant to only simple and routine and/or low-stress work."); Jury v. Colvin, No. 3:12-CV-2002, 2014 WL 1028439, at *12 (M.D. Pa. Mar. 14, 2014) ("Applying the ratio decidendi of Ramirez, the ALJ's failure to incorporate Jury's moderate limitations in persistence or pace in the hypothetical questions to the vocational expert was error."); Weinsteiger v. Astrue, No. CIV. A. 09-1769, 2010 WL 331903, at *11 (E.D. Pa. Jan. 25, 2010) (remanding where the ALJ found that plaintiff suffered from "moderate" difficulties in maintaining concentration, persistence and pace but failed to incorporate these limitations in her hypothetical).

Regardless of whether the terms "often" and "moderate" have the same meaning following the change in the regulatory language, the hypothetical question posed by the ALJ in this case was deficient. The ALJ lacked substantial evidence for his decision because he failed to include all of Plaintiff's credibly established limitations in the hypothetical question. Though

---

[12] Dr. Hite noted on the PRTF in this case that Plaintiff's degree of difficulty in maintaining concentration, persistence, or pace was "moderate." (R. at 821.)

the ALJ properly relied on Dr. Hite's opinion that, despite moderate difficulties in concentration, persistence, and pace, Plaintiff could perform the "basic mental demands of competitive work on a sustained basis," the ALJ did not include this finding in the hypothetical question.  (R. at 28, 821, 826.)  The hypothetical question in this case only addressed Plaintiff's gastrointestinal issues, even though the ALJ also concluded that Plaintiff's RFC was limited to work that is "simple and routine (i.e., unskilled)" and avoids "exposure to dust, fumes, odors, gases, chemicals and poor ventilation."  (R. at 23-29.)  The ALJ's failure to include all of Plaintiff's credibly established mental impairments was error, particularly considering that the burden was on the Commissioner at Step Five to prove that Plaintiff could perform a job that exists in the national economy.[13]  Because the ALJ did not adequately convey Plaintiff's limitations in the hypothetical question, the factual findings of the ALJ are not supported by substantial evidence.  As such, Plaintiff's second Objection will be sustained and remand is necessary to cure the error in the hypothetical question.

## IV.   CONCLUSION

For the foregoing reasons, the Court will approve and adopt the Report and Recommendation filed by Magistrate Judge Rueter in part, and will deny it in part.  This case will be remanded to the Commissioner for further proceedings consistent with this Opinion.

An appropriate Order follows.

---

[13] After questioning the VE, the ALJ mentioned Plaintiff's mental impairment to Plaintiff's attorney, stating: ". . . I believe I'm going to accept the vocational expert's testimony vis a vis a work setting and I still think that the issue is would his mental condition preclude the ability to do that job or any other job."  (R. at 1114.)  However, this concern was not included in the hypothetical question.